[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff has appealed the re-assessment of its real property as part of the 1991 re-valuation, which assessments became effective on October 1, 1991.
The property in question is located at and known as 560 Woodward Avenue in New Haven. It was and is utilized as a "community center or club" and enjoys non-conforming status, existing by virtue of a zoning exception in a residential zone. Thus, as of October 1, 1991 and up to the present time, it could not and cannot be used as a restaurant, or for retail or other commercial purposes.
The court attaches significance to this restriction on use, since the properties referred to in the comparable sales utilized by the appraisers for both sides were not so restricted.
The plaintiff's appraiser was Philip Ball, while the City utilized Joseph F. Perrelli. After Board of Tax Review action, the plaintiff's assessment was based on a market value of $609,000. The plaintiff's appraiser found $530,000 to be the market value, while the city's appraiser arrived at a figure of $630,000, the city's original valuation.
The court has examined each comparable sale, a total of nine different transactions since both appraisers used the Knights of Saint Patrick property on State Street in New Haven.
Three comparables involve social clubs but all three are located in zones where a variety of other uses would exist were the club operation to be terminated. This raises the issue of the potential market for the subject property as opposed to that available for the three social club comparables. CT Page 16938
The court is also struck by the sales prices reflected in some of the comparables when the properties are compared with the subject property. A striking example is the city's comparable #2, a well known and long established restaurant site in Guilford. This property sold for $500,000 and would attract potential restauranteurs if no one else. Even priced at Mr. Ball's figure, the subject property would not. In fact, this demonstrates the very limited potential market for the annex parcel.
While the subject property has an exceptional amount of safe, off street, paved parking, it suffers from being adjacent to the city sewerage treatment plant and industrial uses and is located in a flood hazard area. At least a portion of the property is wetlands.
The court also considered the subject property alongside the comparables in light of the definition of "market value." The city cites this definition in its appraisal:
 "The most probable price which a property will bring in an open and competitive market, under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably and assuming the price is not affected by undue stimulus".
Posing the question of who would pay $630,000 for this parcel were it to be put on the market, the answer is "only another community club or group." No evidence was offered to support this value for its purchase for residential use.
The court concludes that the true market value of the subject property is reflected in the opinion of the plaintiff's appraiser and so it is found to be $530,000 as of October 1, 1991.
Said valuation prevails through October 1, 2000.
The plaintiff is awarded its appraiser's fee in the amount of $800 plus taxable costs.
Anthony V. DeMayo, Judge Trial Referee